THE FIDELITY LAND AND IMPROVEMENT COMPANY v.
JOHN BUZZARD et al.

No. 13,624.   (76 Pac. 832.)

SYLLABUS BY THE COURT.

ACTION FOR DEATH—*Measure of Damages Where Parents Sue
for Wrongful Death of Minor Son.* In an action by the par-
ents to recover damages for the death of a son based upon services
during his minority, and upon benefits which they had expected
to receive from him by way of support after he should have ar-
rived at the age of majority, *held*, that it is error to instruct the
jury that, in addition to the amount which the plaintiffs are entitled
to recover for the loss of the son's services during his minority,
they are entitled to recover such reasonable amount as they may
find that plaintiffs should recover as the pecuniary benefits which
they might have reasonably expected to receive from the son
after he should have reached his majority and during the time he
should have continued to live; and *held, further*, that the pa-
rents' right to recover for such expected benefits is limited to the
life of the parents.

Error from Cherokee district court; A. H. SKID-
MORE, judge.   Opinion filed May 7, 1904.   Reversed.

*W. R. Cowley,* and *Blue & Hamilton,* for plaintiff in
error.

*E. M. Tracewell,* and *W. J. Moore,* for defendants in
error.

The opinion of the court was delivered by

GREENE, J.: This was an action to recover dam-
ages for the death of the plaintiff's minor son, Jesse
Buzzard.   The defendant was a corporation engaged
in mining coal.   Jesse Buzzard was working in the
mines for it and was called a "coal-pusher."   The
coal was lifted from the mine in a cage which was
run by steam, by means of a cable attached to the
top of the cage and passed to the top of the mine and

over a pulley, and thence to the drum in the engine-room, which stood about fifty feet from the top of the mine. It was the duty of the deceased to push small cars of coal from the place where mined into this cage and then pull a wire cord which rang a bell in the engine-room signaling the engineer to hoist the cage.

It was alleged in the petition that one Massengale was the mine-boss, who had charge of all the workmen and directed them in the operation of the mine, employing and discharging whomsoever he chose ; that at the time of deceased's injury Massengale was at the top of the mine with the engineer ; that immediately before the injury the deceased had pushed a car into the cage and had signaled the engineer to hoist the same, and while he was waiting for it to be hoisted the mine-boss called from the top of the mine that if there was a car on the cage the pushers should remove it and get into the cage and come up to assist in replacing a car on the dump ; that the deceased and another pusher undertook to pull the car from the cage, but because of some defect in the cage or car they were unable to do so, and the deceased entered the cage with a short lever, intending to lift the car, in order that his assistant might pull it out of the cage ; that while so engaged, and after they had got the car partially out of the cage, the engineer turned on the steam, thus lifting the cage, by reason of which the deceased was in some way caught between the car and the cage and so injured that he died within a few minutes. The specific acts of negligence charged were that Massengale did not notify the engineer of the instructions given to the pushers, and failed to instruct him not to lift the cage until the pushers had signaled him to do so.

Errors are predicated upon the overruling of the

demurrer to the petition and the overruling of defendant's objection to the introduction of any evidence under the petition. Without particularizing, suffice it to say that we are of the opinion that the petition states a cause of action and that no error was committed in these respects.

The court instructed the jury as follows:

"The mortuary table admitted in evidence in this case may be considered by you in connection with all the other evidence adduced for the purpose of determining the probable duration of the life of the deceased, had he not met death by accident or injury. You are instructed, however, that from the evidence adduced herein the plaintiffs can only recover, if at all, during the years of expectancy of the life of the plaintiffs and not for the years of expectancy of deceased in excess of the expectancy of the life of the deceased."

". . . If your general verdict be for the plaintiffs, you may allow them as damages that amount to which you may find them to be entitled for reasonable services of Jesse Buzzard during his minority; also a reasonable amount as the pecuniary benefits they might have reasonably expected to receive from Jesse Buzzard after he should have reached his majority and during the time he should have continued to live. . . ."

"In submitting the instructions to you I instructed you upon the question of exemplary damages, and I now instruct you that in a case of this character exemplary damages cannot be collected or allowed by you; that is, damages by way of punishment and denominated by law as 'punitive damages'—'smart money'; the damages allowed by you, if any, will be that amount to which you may find the plaintiffs to be entitled for the reasonable services of Jesse Buzzard during his minority, with a reasonable amount as the pecuniary benefits they might have expected to receive from Jesse Buzzard after he should have reached his majority and during the reasonable expectancy of the time he might have lived."

If the plaintiffs were entitled to recover in this action beyond the value of the services of Jesse Buzzard during his minority, the time within which such benefits might accrue is limited to the life of the plaintiffs and is not extended to that of the deceased son. The amount which is recoverable is not capable of exact computation or measurement; it is problematical, depending upon a variety of circumstances and conditions. Nevertheless, the law recognizes the moral obligation of a child after reaching majority to care for his aged, infirm or indigent parents, and recognizes the expectancy of the parents that he will do so, and authorizes a recovery of a reasonable compensation for the negligent deprivation of such expected support. It will be observed that the first instruction correctly states the law that the plaintiff's recovery for benefits expected to be received from their son after his majority is limited to the expectancy of life of the plaintiffs, but the second and third state that, in addition to the plaintiff's right to recover for the loss of the life of their son during his minority, they may also recover such reasonable benefits as they might have reasonably expected to receive from Jesse after he should have reached his majority and during the time he should have continued to live. The expectancy of Jesse, according to the standard mortuary tables, was twenty-eight years longer than that of plaintiffs. Notwithstanding this, the court instructed the jury that the plaintiffs were entitled to recover such benefits as they might reasonably expect to receive from him during the time he should have continued to live, which, according to the tables, would have been twenty-eight years after the plaintiffs are presumed to have been dead. These instructions are clearly erroneous, and, while one

states the law correctly, there is no reason to believe that the jury followed that one in preference to the other two, which state the law incorrectly.

Another question incidentally arises which may become important upon a retrial of this case. We refer to the absence of any evidence tending to show that plaintiffs were in any way depending upon their son for support. This, however, only goes to their right to recover benefits which they might have expected to receive after he should have arrived at majority had he not been killed.

For the error in the instructions the judgment is reversed, and the cause remanded with directions to allow defendant's motion for a new trial.

All the Justices concurring.